Henry Epstein, J.
This trial by order of Mr. Justice Francis X. Conlon dated November 19, 1959 was to assess the amount of damages. Summary judgment had been granted, the elements of damage to be ascertained being (1) the interest on the value of the attached properties during the periods of the sucessive levies, and (2) the reasonableness of the counsel fees billed to plaintiff for services in the attachment proceeding. The Penn-Texas Corporation in August, 1958 brought suit against one Leopold D. Silverstein, former chief executive officer, and David L. Subin, plaintiff herein, for damages caused by an alleged conspiracy and waste of assets of said corporation. Based on Subin’s nonresidence in New York, said Penn-Texas first attached $1,726,721.31 of Subin’s cash and securities in New York banks and security dealers’ hands. The warrant was limited to $300,000 and the undertaking of the instant defendant was only $15,000. The attachment date was August 11 and prompt action by counsel for Subin released all over $350,000 of the attached funds. Immediately a second attachment warrant was obtained by Penn-Texas against Subin’s property and the levies thereunder of August 15 and 18 effectively tied up $1,207,497.87 until released by vacatur of said warrants on September 23,1958.
Penn-Texas had posted two undertakings of the instant defendant, United States Fidelity and Guaranty Company, *1084 of $15,000 and $35,000 respectively to cover the attachments of Subin’s cash and securities. The undertakings were for indemnification of Subin from damage and expense incurred by virtue of the said attachments. Newman and Bisco, counsel of repute in New York, were retained by David W. Niesenbaum, Esq., of the Pennsylvania Bar, personal counsel to Subin, to handle the proceedings aimed at releasing the attached funds of Subin. No issue is raised as to disbursements of these attorneys. There is at issue the value of the services for which plaintiff Subin was billed. Defendant’s counsel frankly admits that “ There is no real issue as to the quality of the services rendered. Defendant herein admits that the services rendered were adequate and highly competent.” (Brief of defendant, p. 3.) Defendant also questions the propriety of the charge for the services of counsel Niesenbaum in this particular litigation which released the attached funds of Subin which by successive attachments had been tied up in one or another of the moves to the extent of over one and one-half million dollars. More than one million dollars in cash was tied up by one of these attachments. Newman and Bisco acting for Subin and with the able assistance of Niesenbaum worked day and night in midsummer of 1958 and achieved the successful results of vacating the attachments and unanimously affirming their success below in the appeal before the Appellate Division of this court. This action is the aftermath of that success and in the opinion of this court well warrants the full recovery sought against the defendant’s undertakings.
Plaintiff should have judgment for the interest on the value of the attached property during the attached periods. From August 11 to August 15, 1958, some $1,726,721.73 was under levy. On the latter date all but $350,000 was released. For that period the interest calculated at 6% is $1,438.93. On the twc successive warrants the sum of $1,207,497.87 was tied up fror August 15, 1958 to September 23, 1958. The interest on tnis sum is $7,647.49, making a total loss of interest $9,086.42, for which judgment is rendered. The recent development of the law recognizes the correctness of this conclusion. (McNaughton v. International Diesel Elec. Co., 286 App. Div. 1021.) 1 ‘ Damages ’ ’ is the result of depriving the owner of the use of his property. This constitutes the compensation to the owner, or possibly the civil penalty on the wrongdoer for having wrongfully invaded the owner’s enjoyment of his property. (Flamm v. Noble, 296 N. Y. 262, 268.) Interest at the legal rate of 6% is proper because it is the rate authorized for damages for unlawful detention of an owner’s property.
*1085 Plaintiff’s case for the value of his counsels’ services, both those of Newman and Bisco and those of Niesenbaum, is well founded and amply established. Penn-Texas sought to sustain its first attachment, extended the scope of that attachment, sought to avoid the liability for the Sheriff’s poundage and on the instant defendant’s undertakings. No charge is here sought to be imposed for services in the action of Penn-Texas against this plaintiff on the merits therein, even though Subin is now appearing therein on the merits by reason of the instant proceedings and the agreement reached before Mr. Justice Breitel of the Appellate Division. The services of Newman and Bisco and Niesenbaum were of first quality, rendered under most trying circumstances, supported by individual research and personal attention, which achieved prompt and exceptional success. Hours alone do not measure the value of services of this character. This was an emergency job of releasing some $1,700,000 of liquid assets, including over one million dollars in cash. Time alone is important. Day and night work in mid-August and September are not ordinarily measured in fixed rates per hour. Other factors are more important. The profitable result — success — is of substantial value in measuring the reasonableness of counsel’s fees. (Matter of Potts, 213 App. Div. 59, 62, affd. 241 N. Y. 593; Matter of Harris, 277 App. Div. 1030; Matter of Chieffo, 86 N. Y. S. 2d 343.) Mechanical measurement is hardly if ever the appropriate standard for determining the reasonableness of professional charges for services of exceptional quality yielding successful results. Each case is different from another. The fairness of Mr. Niesenbaum’s fee can likewise be so measured. (Elsman v. Glens Falls Ind. Co., 146 Misc. 631; Matter of Potts, supra.) The services of Newman and Bisco are reasonably measured by the bill rendered for $25,918.44. The Niesenbaum bill for services is reasonably measured by the bill rendered for $6,633.40. Motion costs and appeal costs totalling $40 are properly allowed. Interest on the sums attached and tied up for the periods unavailable to the plaintiff owner is allowed in the sum of $9,086.42. From the total of these damages should be deducted the payments of $198.62 received on account of costs and disbursements. This leaves a total of damages allowed in the sum of $41,479.64 for which judgment may be entered, with interest from the date of the release of the illegal levies, September 23, 1958. The foregoing constitutes the decision of the court, findings and conclusions being waived.